UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AL GHADEER MEAT MARKET
INC. and NADIA SAAD,

               Plaintiffs,

v.

UNITED STATES OF AMERICA
DEPARTMENT OF
AGRICULTURE, FOOD AND
NUTRITION SERVICE,

               Defendant.

Case No. 2:19-cv-12131

HONORABLE STEPHEN J. MURPHY, III

/

**OPINION AND ORDER
<u>GRANTING MOTION FOR SUMMARY JUDGMENT [31]</u>**

In early 2019, Defendant United States Department of Agriculture ("USDA") charged Plaintiff Al Ghadeer Meat Market with trafficking food stamps in violation of Supplemental Nutrition Assistance Program ("SNAP") regulations. ECF 31-8, PgID 715. The USDA issued a final decision letter that permanently disqualified the meat market from participating in the Program, ECF 31-9, PgID 719–20, and Plaintiff appealed to the USDA Food and Nutrition Service ("FNS") Administrative Review Branch, ECF 1, PgID 4. In a "Final Agency Decision," an administrative review officer affirmed the permanent disqualification. ECF 31-10, PgID 721–27. Al Ghadeer and Nadia Saad, its "owner of record," ECF 1, PgID 2, then timely sued for judicial review of the administrative decision, ECF 1; *see* ECF 31-10, PgID 727.

1

After discovery closed, the Government moved for summary judgment. ECF 31. The parties briefed the motion. ECF 32; 33. The Court has reviewed the briefing and the evidence, and a hearing is unneeded. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons explained below, the Court will grant the Government's motion for summary judgment, ECF 31, and dismiss the case with prejudice.

## BACKGROUND

Al Ghadeer is a "meat, produce[,] and grocery market" in Dearborn, Michigan. ECF 1, PgID 2. Prior to 2019, Al Ghadeer "was an authorized retail participant in SNAP." *Id.* at 4. FNS issues SNAP benefits to eligible individuals through monthly credits to electronic benefit transfer ("EBT") cards. 7 U.S.C. § 2016(a), (j)(1)(A). Recipients of EBT cards may use SNAP benefits only "to purchase food from retail food stores which have been approved for participation in [SNAP]." § 2016(b). Intentionally exchanging SNAP benefits for items other than food, such as cash or household goods, is prohibited by the Program. *See* 7 C.F.R. § 271.2 (definition of "Trafficking"); 7 U.S.C. § 2021(a).

In January 2019, the USDA FNS charged Al Ghadeer with trafficking for exchanging SNAP benefits for cash and ineligible (non-food) items. *Id.*; ECF 31-8, PgID 715–18 (charge letter). The charge letter detailed fourteen times that an undercover confidential source successfully engaged in trafficking at Al Ghadeer. ECF 31-8, PgID 715–18; *see also* ECF 31, PgID 511–12; ECF 31-5, PgID 602–95; ECF 31-6, PgID 700–05.

As part of the investigation, FNS special agents prepared "EBT SNAP Transaction Worksheet[s]" that detailed where SNAP benefits were sold, described the employee who engaged in the trafficking, and listed the total amount of SNAP benefits exchanged for eligible items, ineligible items, and cash. *See, e.g.*, ECF 31-5, PgID 608. One FNS special agent also obtained a statement by an Al Ghadeer employee who admitted under oath to SNAP trafficking at the direction of Al Ghadeer management. ECF 31, PgID 513–14; ECF 31-4, PgID 584; ECF 31-11, PgID 728–29 (Abdul Latif Fayad statement). FNS named the employee in ten of the fourteen alleged instances of SNAP trafficking in the charge letter. ECF 31, PgID, 511–12; ECF 31-8, PgID 715–18. The employee later recanted the admission in an affidavit. ECF 9-2, PgID 200.

FNS confirmed the details of the special agent reports by cross-checking the dates and amounts of the Al Ghadeer transactions in question by use of the agency's "ALERT system"—a database that "records all of the EBT transactions nationwide." ECF 31-7, PgID 710. The cross-check revealed "no discrepancies." *Id.* at 711.

In response to the charge letter, Al Ghadeer submitted forensic accounting findings to dispute FNS's trafficking evidence. ECF 1, PgID 5–6. In February 2019, FNS sent another letter to Al Ghadeer which found "that the violations cited in [the] charge letter occurred at [Al Ghadeer]," and resulted in permanent disqualification of Al Ghadeer from SNAP. ECF 31-9, PgID 719. Al Ghadeer and its owner then timely requested administrative review of the decision, ECF 1, PgID 6, and the review

3

board's "Final Agency Decision" upheld the permanent disqualification. *Id.* at 7; ECF 31-10, PgID 721–27.

## LEGAL STANDARD

A party that "feels aggrieved by [a] final determination" of the USDA FNS Administrative Review Branch "may obtain judicial review thereof by filing a complaint" in federal court. 7 U.S.C. § 2023(a)(13). But a final agency decision to levy sanctions, "if within bounds of its lawful authority, is subject to very limited judicial review." *Woodard v. United States*, 725 F.2d 1072, 1077 (6th Cir. 1984) (citation omitted). "The suit in the United States district court . . . shall be a trial de novo . . . [to] determine the validity of the questioned administrative action in issue." § 2023(a)(15); *see also Goldstein v. United States*, 9 F.3d 521, 523 (6th Cir. 1993). And in the district court proceeding, the burden of proof rests with "the aggrieved [party] to establish the invalidity of the administrative action by a preponderance of the evidence." *Warren v. United* States, 932 F.2d 582, 586 (6th Cir. 1991) (citation omitted). If the Court determines that the party violated the SNAP regulations, "the [C]ourt's only task is to examine the sanction imposed in light of the administrative record in order to judge whether the agency properly applied the regulations." *Goldstein*, 9 F.3d at 523 (citing *Woodard*, 725 F.2d at 1077). "If the agency properly applied the regulations, then the [C]ourt's job is done and the sanction must be enforced." *Id.*

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

4

judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must identify specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When resolving a motion for summary judgment, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## DISCUSSION

The Government moved for summary judgment on the grounds that (1) SNAP trafficking occurred at Al Ghadeer, and accordingly, (2) permanent disqualification was proper. The Court will first address whether there is a genuine issue of material fact that SNAP trafficking occurred at Al Ghadeer. After, the Court will discuss the permanent disqualification sanction in light of the administrative record.

I. SNAP Trafficking

SNAP "trafficking" is the "selling . . . or otherwise effecting an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards . . . *for cash or consideration other than eligible food.*" 7 C.F.R. § 271.2 (emphasis added). FNS must "disqualify a firm permanently if . . . [p]ersonnel of the firm have trafficked as defined in § 271.2." § 278.6(e)(1)(i). Moreover, a seller may be permanently disqualified from SNAP on "the first occasion or any subsequent occasion of a disqualification based on the purchase of coupons or trafficking in coupons or authorization cards by a retail food store." 7 U.S.C. § 2021(b)(3)(B); *see McClain's Mkt. v. United States*, 214 F. App'x 502, 505 (6th Cir. 2006) (citation omitted). And "[t]o survive summary judgment, a plaintiff in a Food Stamp Program disqualification case must raise material issues of fact as to *each* alleged violation." *McClain's Mkt.*, 214 F. App'x at 505 (emphasis in original) (citation omitted).

Despite facing the minimal burden to show only one occasion of trafficking to permanently disqualify Al Ghadeer from SNAP, the Government offered evidence of fourteen separate incidents. ECF 31, PgID 511–12; ECF 31-5, PgID 602–95; ECF 31-6, PgID 700–05. Twelve occasions involved the exchange of SNAP benefits for cash, ECF 31, PgID 511–12, the type of conduct that meets the "trafficking" criteria under 7 C.F.R. § 271.2. Barring a genuine issue of material fact as to each trafficking occasion, permanent disqualification was an appropriate sanction.

Plaintiffs relied on four arguments to dispute the trafficking evidence. First, Plaintiffs asserted that "trafficking without gain is not trafficking." ECF 32, PgID

6

762, 766. Second, Plaintiffs argued that the Government's video evidence[1] did not show "that Al Ghadeer obtained SNAP benefits above or beyond what was transacted with the customer," *id.* at 764, and that the Government relied on an untrustworthy statement from an employee, *id.* at 759–60. Third, Plaintiffs pointed out that the alleged instances of trafficking "were not otherwise investigated or corroborated, outside of the ALERT system." *Id.* at 766. And fourth, Plaintiffs claimed that the "Court should find that FNS's reliance on such few transactions, completed over such a large time period, and for such a small dollar amount, do not rise to the level required for permanent disqualification under 7 C.F.R. [§] 278.2." *Id.* But the arguments fail to show a genuine issue of material fact as to each alleged occasion of trafficking. The Court will address Plaintiffs' argument in turn.

    A.    *Profit*

Plaintiffs asserted that the alleged trafficking transactions did not lead to "additional profit or financial benefit to Al Ghadeer." *Id.* at 766; *see also id.* at 756 (forensic accounting analysis finding that "Al Ghadeer did not profit from any alleged trafficking activity"). To support the argument that "trafficking without gain is not trafficking," Plaintiffs relied on an unpublished opinion from the United States District Court for the District of Connecticut. *Id.* at 762 (citing *Sky Grocery, LLC v. United States Dep't of Agric. Food & Nutrition Serv.,* No. 3:15-cv-1082, 2017 WL 1054484, at *1 (Mar. 20, 2017)).

---

[1] Plaintiffs filed the video evidence in the traditional manner.

The argument has three flaws. First, the *Sky Grocery* case is not binding authority. Second, *Sky Grocery* merely offered an example of trafficking that resulted in a profit to a fictitious store, but that court did not purport to interpret the statutory text as requiring a profit. *See* 2017 WL 1054484, at *1 ("For example, trafficking occurs when a store charges $25 to a customer's EBT card, the cashier then gives the customer a $20 bill, and the store retains the difference."). And third, the plain definition of "Trafficking" reveals that profit is irrelevant to whether trafficking occurred. Trafficking is "an exchange of SNAP benefits . . . for cash or consideration other than eligible food." 7 C.F.R. § 271.2. Simply put, if a store charges $25 to a customer's EBT card, and the cashier gives the customer a $20 bill and a $5 eligible food item in return, then trafficking has occurred under the statute. Although no profit is gained by the store, an illegal exchange of SNAP benefits for cash occurred under § 271.2.

And that is precisely what occurred here. Al Ghadeer demonstrably exchanged eligible items, ineligible items, and cash for SNAP benefits fourteen times. Plaintiffs' argument that it did not profit is irrelevant and does not present a genuine issue of material fact that SNAP benefits trafficking occurred at Al Ghadeer.

    B.    *Video Evidence and Employee's Statement*

Plaintiffs next argued that video evidence produced by the Government showed that five transactions did not involve cash. ECF 32, PgID 764. But the first date, January 7, 2010, is not when Plaintiffs allegedly trafficked. *Compare id.*, *with* ECF 31, PgID 511–12. The third and fourth dates, August 21, 2017 and December 13,

8

2017, are not when Plaintiffs allegedly trafficked *cash*. *Compare* ECF 32, PgID 764, *with* ECF 31, PgID 511–12. The remaining dates are November 2, 2017 and December 19, 2017. ECF 32, PgID 764. And Plaintiffs alleged that the video evidence showed no cash exchange, which clearly contradicts the picture evidence offered by the Government on those dates. *Compare* ECF 32, PgID 764, *with* ECF 31, PgID 511–12, *and* ECF 31-5, PgID 659–65, 673–80.

Plaintiffs also argued that the Government could not rely on the employee's written statement to the special agent. ECF 32, PgID 759–60. Plaintiffs asserted that the employee "struggles mightily with the English language" and that he "never had a true opportunity to verify what was written on the paper." *Id.* But deposition testimony of the FNS program specialist who drafted the charge letter revealed that the employee's statement "was just extra information" in the Al Ghadeer investigation. ECF 33-1, PgID 873. Instead, "the exhibits provided by [the Office of the Inspector General]" were the basis for the charge letter. *Id.* And the FNS section chief also testified that he did not consider the employee's statement to the special agent despite knowing about it. ECF 31-7, PgID 711.

Both of Plaintiff's arguments fail to show genuine issues of *material* fact. *See Kendall*, 751 F.2d at 174 (explaining that a fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense). The reliability of the video evidence for two dates of alleged trafficking is immaterial. As set forth above, permanent disqualification may be levied after the "first occasion" of trafficking. 7 U.S.C. § 2021(b)(3)(B); *see also Alkabsh v. United States*, 733 F. Supp.

9

2d 929, 935 (W.D. Tenn. 2010) ("Only one instance of trafficking is sufficient to establish a violation.") (citing *McClain's Mkt.*, 214 F. App'x at 505). Thus, even if no cash were exchanged on the two dates offered by Plaintiffs (November 2, 2017 and December 19, 2017), the Government would have still produced evidence of ten other occasions on which Plaintiffs exchanged cash for SNAP benefits.[2] *See* ECF 31, PgID 511–12 (August 22, 2011; October 20, 2016; November 22, 2016; January 5, 2017; February 14, 2017; May 16, 2017; June 22, 2017; July 26, 2017; March 1, 2018; June 7, 2018). The dispute is immaterial, and Plaintiffs failed to raise a genuine issue about the other instances of cash-involved trafficking.

The disputed credibility of the employee's statement is also immaterial. The Government did not rely on the statement when it charged Al Ghadeer with trafficking violations. ECF 33, PgID 865–67. Besides, the picture evidence accompanied by each "EBT SNAP Transaction Worksheet" showed that Al Ghadeer exchanged food stamps for cash or ineligible items several times. *See* ECF 31-5, PgID 602–95; ECF 31-6, PgID 70–05. And that evidence was corroborated by the ALERT searches that were detailed in the FNS section chief's deposition testimony. ECF 31-7, PgID 710. Thus, even without the statement, the corroborated evidence shows that trafficking occurred at Al Ghadeer many times.

---

[2] Moreover, the video evidence does not clearly capture the transactions in full. *See* ECF 32, PgID 764 n.2 (Video Exhibit (12-19-17) at 18:55–19:20). Even so, a cashier does appear to give the confidential source cash on November 2, 2017, *see id.* (Video Exhibit (11-2-17) at 19:25–19:35). In all, the videos do not create a genuine issue of material fact about whether Plaintiffs exchanged cash for SNAP benefits.

In all, the disputes about the video evidence and the employee's statement are immaterial. The arguments do not resist an order of summary judgment.

### C. Corroboration

Plaintiffs appeared to assert that the Court should question the final agency decision because the basis for disqualifying Al Ghadeer from SNAP was never corroborated apart from the ALERT system check. ECF 32, PgID 757–58, 766. Plaintiffs pointed out that "aside from the [Office of Inspector General]'s reports on the transactions," there was no "independent verification that cash was indeed transferred during any of the [fourteen] transactions." *Id.* at 758 (emphasis and citation omitted). But Plaintiffs offer no law in support.

In a different section of Plaintiffs' brief, however, they rely on the veracity of the transactions. *See id.* at 762–63 (arguing that the transactions "verify" that Al Ghadeer did not gain a profit through the alleged occasions of trafficking). At any rate, the picture evidence coupled with the deposition testimony of the special agents and the ALERT system cross-check corroborated the transactions. *See generally* ECF 31-4, PgID 570–77 (special agent testimony); ECF 31-5, PgID 586–601, 603–695 (investigation declaration, documentation, and photos); ECF 31-6, PgID 696–705 (investigation declaration, documentation, and photos); ECF 31-7, PgID 710–11 (section chief describing ALERT system).

In short, the alleged trafficking was well corroborated, and Plaintiffs' brief confirms that much. Thus, Plaintiffs' argument that the trafficking allegations lacked

11

corroboration fails and does not raise a genuine dispute that the cash exchanges for SNAP benefits occurred several times.

### D. De Minimis Levels of Trafficking

At its core, Plaintiffs' last argument stressed that only a little trafficking is not worthy of disqualification. *See* ECF 32, PgID 766 ("[T]his District Court should find that the FNS's reliance on such few transactions, completed over such a large time period, and for such a small dollar amount, do not rise to the level required for permanent disqualification."). But the argument conflicts with the regulatory text. Plaintiffs cited 7 C.F.R. § 278.2 to assert that there is a purported "level required for permanent disqualification." ECF 32, PgID 766. Yet the section never mentions "level[s]," and only discusses disqualification in relation to paying credit accounts, *see* § 278.2(f), which is inapplicable here. To be sure, § 271.2 defines trafficking as the exchange of SNAP benefits "for cash or consideration other than eligible food." The plain text lacks a requirement for multiple violations, completed in a short period of time, for large dollar amounts. *See generally* § 271.2; *Bakal Bros. v. United States*, 105 F.3d 1085, 1087, 1090 (6th Cir. 1997) (affirming a district court's decision to sustain a permanent disqualification sanction against a convenience store for only three instances of illegal trafficking transactions). The argument therefore fails to raise a genuine issue of material fact about the trafficking claims.

Last, Plaintiffs' 'rogue employee' theory also fails. *See generally* ECF 31-2, PgID 546; ECF 31-3, PgID 560; ECF 32, PgID 755–56. The Sixth Circuit has settled that "a store is responsible for illegal trafficking by employees even if there is evidence

12

that neither the owner nor manager of the store 'was aware of, approved, benefited from, or was involved in the conduct or approval of the violation.'" *Bakal Bros.*, 105 F.3d at 1088 (quoting 7 U.S.C. § 2021(b)(3)(B)). And "Congress has made clear that innocent store owners should be held responsible for the independent, unauthorized acts of store personnel." *Id.* at 1090. Thus, whether the SNAP trafficking at Al Ghadeer was "representative of Al Ghadeer's normal business practices," ECF 32, PgID 756, is irrelevant to whether FNS properly disqualified Al Ghadeer from SNAP.

II. Permanent Disqualification

Now that the Court has determined that Al Ghadeer violated the SNAP regulations, "the [C]ourt's only task is to examine the sanction imposed in light of the administrative record in order to judge whether the agency properly applied the regulations." *Goldstein*, 9 F.3d at 523 (citing *Woodard*, 725 F.2d at 1077).

Title 7 of the Code of Federal Regulations, Section 278.6, details the penalties levied on companies that violate SNAP regulations. FNS must "[d]isqualify a firm permanently if" the company has "trafficked as defined in § 271.2." § 278.6(e)(1)(i).

FNS may, however, "impose a civil money penalty as a sanction in lieu of disqualification when . . . the firm's disqualification would cause hardship to SNAP households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices." § 278.6(f)(1). But "[a] civil money penalty for hardship to SNAP households may not be imposed in lieu of a *permanent* disqualification." *Id.* (emphasis added). FNS, in its discretion, may

13

impose a civil money penalty instead of permanent disqualification only if "substantial evidence [shows] that the store had an effective policy and training program in effect to prevent violations of the statutes and regulations." *Goldstein*, 9 F.3d at 523; *see* 7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. § 278.6(a), (i)–(j).

Here, FNS properly and permanently disqualified Al Ghadeer from SNAP. As a result, any showing by Plaintiffs that its disqualification would cause hardship to SNAP households could not have been the basis for a civil money penalty. To repeat, FNS may not impose a civil money penalty rather than permanent disqualification on that basis. § 278.6(f)(1). Instead, Plaintiffs had to point to "substantial evidence that the store had an effective policy and training program in effect to prevent violations of the statutes and regulations." *Goldstein*, 9 F.3d at 523. Plaintiffs offered no evidence of a policy or training program established to prevent SNAP violations. *See* ECF 31-7, PgID 712–13 (detailing Al Ghadeer's response to the charge letter); ECF 32, PgID 755–56 (noting that Al Ghadeer's "disqualification from the SNAP program would create hardship to the customers in its vicinity"); *see also* ECF 33, PgID 867–68 ("[H]ardship to the community is immaterial because Plaintiffs were permanently—not temporarily—disqualified from participation in SNAP.").

All told, because Al Ghadeer trafficked SNAP benefits as defined in § 271.2, permanent disqualification was proper. *See* § 278.6(e)(1)(i). And FNS could not have imposed a civil money penalty rather than disqualification because Plaintiffs failed to show that it had implemented an effective policy and training program to prevent violations of the SNAP regulations. *See* 7 C.F.R. § 278.6(a), (i), (j). Accordingly, FNS

14

"properly applied the regulations." *Goldstein*, 9 F.3d at 523 (citing *Woodard*, 725 F.2d at 1077).

III. <u>Fifth Amendment Invocation</u>

Last, the Government argued that "the Court may draw an adverse inference from Plaintiffs' assertion of the Fifth Amendment" in the depositions. ECF 31, PgID 527; *see generally* ECF 31-2; ECF 31-3; ECF 31-12; ECF 31-13. "[T]he Fifth Amendment permits adverse inferences against parties in civil cases 'when they refuse to testify in response to probative evidence offered against them.'" *Lawrence v. Madison Cnty.*, 176 F. Supp. 3d 650, 663 (E.D. Ky. 2016) (emphasis omitted) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)). But the Court need not rule on adverse inferences. For one, even without drawing adverse inferences, the Court has found that there is no genuine issue of material fact that Al Ghadeer trafficked SNAP benefits. For another, Plaintiffs waived the argument by not addressing it in their response brief. *See generally* ECF 32.

## CONCLUSION

In all, Plaintiffs cannot show that the USDA's permanent disqualification of Al Ghadeer was invalid by a preponderance of the evidence. *See Warren*, 932 F.2d at 586. And given that SNAP trafficking occurred at Al Ghadeer, the USDA properly issued a permanent disqualification from SNAP. *See Goldstein*, 9 F.3d at 523. Because the USDA properly disqualified Al Ghadeer, the Court must enforce the sanction. The Court will therefore grant the Government's summary judgment motion and dismiss the case with prejudice.

15

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that the motion for summary judgment [31] is **GRANTED**.

**IT IS FURTHER ORDERED** that the case is **DISMISSED WITH PREJUDICE**.

This is a final order that closes the case.

**SO ORDERED.**

                                      s/ Stephen J. Murphy, III
                                      STEPHEN J. MURPHY, III
                                      United States District Judge

Dated: March 15, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 15, 2022, by electronic and/or ordinary mail.

                                      s/ David P. Parker
                                      Case Manager